**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| DAVID RAY BURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. CIV-20-353-JFH-KEW |
| | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff David Ray Burch (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 62 years old at the time of the ALJ's decision. He has a high school education and past work as a service advisor. Claimant alleges an inability to work beginning on September 30, 2017, due to limitations resulting from scoliosis and a ruptured disc in his back.

## Procedural History

On November 16, 2018, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 24, 2020, ALJ B.D. Crutchfield conducted an administrative hearing in Tulsa, Oklahoma, at which

Claimant was present and participated. On March 9, 2020, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on August 7, 2020, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work.

## Errors Alleged for Review

Claimant asserts the ALJ erred by (1) failing to propound a proper hypothetical question that included consideration of all of his limitations; (2) failing to perform a proper step four analysis; and (3) finding Claimant could perform other jobs at step five.

## Consideration of Claimant's Limitations

In her decision, the ALJ found Claimant suffered from severe impairments of dextroscoliosis and changes of the lumbar spine. (Tr. 12). She determined Claimant could perform light work, including lifting or carrying and pushing or pulling twenty pounds occasionally and ten pounds frequently; sitting, standing, or walking six hours in an eight-hour workday, all with normal breaks;

4

and having unlimited ability to climb ramps or stairs, ladders, ropes, or scaffolds, and balancing, kneeling, crouching, or crawling. (Tr. 15).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform his past relevant work as a service advisor. She also determined that there were transferable skills from Claimant's past relevant work, allowing for him to perform the representative jobs of general office clerk, motel clerk, and counter attendant, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 23-25). As a result, the ALJ concluded Claimant had not been under a disability from September 30, 2017, through the date of the decision. (Tr. 25).

Claimant argues that the ALJ failed to include certain mental and physical limitations in the RFC. Regarding his physical limitations, Claimant contends that even though the ALJ found he suffered from severe physical impairments of dextroscoliosis and changes of the lumbar spine, she failed to include any limitations in the RFC, specifically limitations for bending/stooping.

The ALJ discussed Claimant's allegations, hearing testimony, and the medical evidence regarding Claimant's back impairment. (Tr. 16-22). When determining Claimant's RFC, she noted that the evidence supported that Claimant could perform a full range of light work. She referred to the evidence in detail and concluded

5

that no greater or additional limitations were supported. (Tr. 21-22).

The ALJ also addressed the opinion evidence from the consultative examiners who determined Claimant could perform light work with frequent stooping. (Tr. 22, 62-64, 76-78). She found the opinions partially persuasive, as to Claimant's ability to perform light work. However, the ALJ determined the limitation for frequent stooping was inconsistent with the other evidence. She noted the file did not include an updated MRI of the lumbar spine noting a worsening condition. She further relied on examination findings from November of 2019, which indicated that although Claimant had an altered gait pattern, he had intact sensation and strength in the lower extremities, negative clonus, and negative FABERS bilaterally. (Tr. 22). She again made detailed references to the evidence in support of the RFC assessment that Claimant could perform a full range of light work. (Tr. 23).

The ALJ discussed the evidence of Claimant's back impairment in detail and provided reasons for her RFC determination that Claimant could perform a full range of light work. She specifically discussed why she did not include a limitation for bending/stooping in the RFC. The Court finds no error in the ALJ's decision regarding Claimant's physical limitations.

Claimant also argues, however, that the ALJ failed to properly consider his mental impairments. Claimant asserts that even though

the ALJ found his mental impairment was non-severe, the ALJ should have considered the limiting effects of all of Claimant's impairments in the RFC. Claimant specifically asserts that the ALJ failed to explain why his "mild" mental limitations at step two did not result in any functional limitations at step four.

The ALJ determined that Claimant's major depressive disorder, anxiety disorder, panic disorder, and post-traumatic stress disorder did not singly and in combination cause more than minimal limitations in his ability to perform basic mental work activities and were therefore non-severe. (Tr. 12). The ALJ considered the four areas of mental functioning – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself – finding that Claimant had mild limitations in all four areas. She relied upon Claimant's functional reports, hearing testimony, and examination findings, concluding that "no more than mild limitations are supported." (Tr. 13-15). She determined the medically determinable mental impairments were non-severe, noting that "[t]he following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 15).

In the decision, the ALJ summarized the objective medical evidence, including evidence of Claimant's mental health treatment. Claimant sought psychotherapy for depression, lack of

concentration, anxiety, panic, past traumatic events, fear of losing his job, and guilt in December of 2016. He was assessed with major depressive disorder (recurrent episode, severe) and panic disorder and referred for therapy. (Tr. 18, 296-97, 298-300). In a January of 2017 progress note, it was noted Claimant did not need in-patient care because he was not a threat to himself or others, but he was very depressed and in need of counseling. Claimant was to attend therapy twice per week. (Tr. 18, 303-04). The record contains mental progress notes through March of 2017. (Tr. 305-15). A termination note from September of 2017, indicated Claimant had made some progress and discontinued services. (Tr. 316). Claimant continued to receive medication refills for his mental impairments. He reported doing well on medication. (Tr. 18-19, 351-61).

Claimant began receiving treatment at the Stigler Health and Wellness Center in April of 2019. He was assessed with post-traumatic stress disorder and was taking medication for anxiety. His mood/affect was described as "stressed." (Tr. 20, 468-71). He also reported depression and a standardized depression screening on one occasion was negative for symptoms and on another he showed mild to moderate symptoms. When asked if he felt stressed, Claimant answered, "very much." He was referred to a behavioral health consultant. (Tr. 463-67, 472-76). A letter dated February 5, 2020, indicates that Claimant received counseling services at the Health

and Wellness Center from April 11, 2019, through July 7, 2019. (Tr. 20, 479).

The ALJ also discussed how persuasive she found the opinions of the non-examining psychological consultants. She found the opinion of James Sturgis, Ph.D., that Claimant's mental impairment was non-severe, to be persuasive. (Tr. 22, 60-61). However, she found the opinion of non-examining psychological consultant Stephen Scott, Ph.D., was not persuasive, because he determined Claimant did not have a medically determinable mental impairment. (Tr. 23, 74-75).

The ALJ determined at step two that Claimant had mild mental limitations in the four areas of functioning, which resulted in a finding of a non-severe mental impairment. (Tr. 12-15). In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), however, the Tenth Circuit held that the "conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id*. at 1068-69. When assessing RFC, "the ALJ must consider the combined effect of all medically determinable impairments, whether severe or not." *Id*. at 1069. "[T]o the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Id*. at 1071.

Although the ALJ discussed the evidence of Claimant's mental health treatment in the decision, she did not include any mental limitations in the RFC. She merely stated that "[t]he following [RFC] assessment reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 15). When posing hypothetical questions to the VE, the ALJ appeared to rely on her finding that Claimant's mental impairment was non-severe, by advising the VE to "[a]ssume any mental limitations are not severe enough to interfere with the ability to perform work related activities." (Tr. 50-51). More importantly, the ALJ never specifically explained why she chose not to include any mental limitations in the RFC, even though she determined that Claimant suffered from mild limitations. Such an explanation was important since there was some evidence of mild to moderate symptoms of depression as late as April of 2019, and the Claimant never underwent a consultative mental status examination. The Court finds this is error based upon the Tenth Circuit's decision in *Wells*.

Moreover, because the ALJ failed to properly assess Claimant's RFC, her step four determination that Claimant could perform her past relevant work as a service advisor and her step five determination that Claimant could perform other jobs in the national economy are not supported by substantial evidence. On remand, the ALJ should consider all of Claimant's impairments, and

fully explain why certain impairments do not result in limitations in the RFC. She should then determine what work Claimant can perform, if any, or if he is disabled.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of February, 2022.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE